**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **SPECTRUM Commercial Finance, LLC,** <br> **Plaintiff,** <br> **v.** <br> **Schwebel Baking Company, *et al.*,** <br> **Defendants.** | **CASE NO.: 4:26-cv-01628** <br> **Judge John R. Adams** <br> **Magistrate Judge Carmen E. Henderson** |

## AGREED ORDER APPOINTING RECEIVER

This cause came on to be heard on the Emergency Motion of Spectrum Commercial Finance, LLC for Appointment of Receiver and request for immediate consideration (the "**Motion**") filed by Plaintiff Spectrum Commercial Finance, LLC ("**Spectrum**"). The Court has reviewed the Motion, the pleadings, the proposed order, the record, and the representations made in support of the Motion. The Court hereby finds that:

A. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because the parties are of completely diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs. The Court has ancillary and equitable jurisdiction over Spectrum's request for appointment of a receiver and related injunctive relief because such relief is substantially related to Spectrum's claims and is necessary to preserve the value of property that is the subject of this action. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Spectrum's claims occurred in this District, Schwebel Baking Company maintains its principal place of business in this District, and a substantial part of the collateral and property that is the subject of this action is located in this District.

B. Schwebel Baking Company ("**Schwebel**" or the "**Borrower**") is an Ohio corporation with its principal place of business in Youngstown, Ohio. Schwebel Baking Company of N.Y., Inc., Schwebel Baking Company of PA., SBC Transportation, Inc., and SBC Transportation of PA, Inc. (collectively, the "**Guarantors**") are guarantors of Schwebel's obligations to Spectrum. Schwebel and the Guarantors are referred to collectively in this Order as the "**Receivership Entities**."

C. Spectrum is the lender under a General Credit and Security Agreement dated February 4, 2025, as amended by a First Amendment dated December 9, 2025, and related loan documents. The obligations owing to Spectrum are guaranteed by the guarantor entities and are secured by security interests in substantially all personal property of Schwebel and the guarantor entities, including accounts, receivables, inventory, equipment, general intangibles, deposit accounts, investment property, cash, non-cash proceeds, books and records, and related collateral. Spectrum's security interests are reflected by UCC filings with the Ohio Secretary of State, the New York Department of State, and the Pennsylvania Department of State.

D. Schwebel and the Guarantors acknowledged in the Forbearance Agreement dated June 23, 2026 that they are in default under the loan agreement, guaranties, security agreements, and related loan documents. They further acknowledged that, as of May 31, 2026, the total indebtedness outstanding under the loan agreement was $5,366,781.11, exclusive of additional accrued interest, default interest, costs, expenses, attorneys' fees, and other amounts recoverable under the loan documents.

E. Schwebel has experienced a material adverse change in its business and financial condition. Schwebel and the guarantor entities have retained KCP Advisory Group as restructuring advisor, made substantial management changes, issued a WARN Act notice, and taken steps to

wind down, liquidate, or close substantially all of their business operations. The Receivership Entities are subject to multiple pending lawsuits. The Receivership Entities cannot complete an orderly wind-down or liquidation without access to cash collections, preservation of collateral, disciplined control over expenditures, collection of receivables, and continued funding or other support acceptable to Spectrum.

F. Spectrum therefore filed the Motion seeking appointment of KCP Advisory Group ("**KCP**"), through its team led by founder and CEO Jacen Dinoff ("**Dinoff**"), as receiver over the Receivership Entities and their assets, in an effort to preserve the assets of the Receivership Entities, maximize the value of the Receivership Entities for the benefit of creditors, maintain disciplined control over expenditures, oversee collection of receivables, and complete an orderly wind-down or liquidation. The Court finds that KCP is qualified to serve as the Receiver in this matter. Further, KCP has significant receivership experience and has agreed to accept fees for its services and the services of its employees and operational consultants as set forth in Dinoff Declaration attached to the Motion as Exhibit A.

G. Federal courts typically consider multiple factors when determining whether to appoint a receiver, including the consent of the defendant, the adequacy of security, the financial position of the borrower, imminent danger that property will be lost or diminished in value, the inadequacy of legal remedies, whether the probable harm by denial of appointment outweighs injury to parties opposing appointment, the plaintiff's probability of success, and whether the interests sought to be protected will be well served by receivership.

H. Based on the record and the factors governing appointment of a receiver, the Court finds that a receiver should be appointed because: (a) Spectrum is owed a substantial sum; (b) Spectrum has perfected security interests in substantially all personal property collateral of the

Receivership Entities; (c) the Receivership Entities are in default and are winding down substantially all business operations; (d) there is imminent danger that receivables, inventory, equipment, cash, proceeds, records, and other collateral and property will be lost, dissipated, concealed, impaired, or diminished in value absent immediate receivership relief; (e) there are multiple pending proceedings against Schwebel, and legal remedies are inadequate to protect Spectrum, the Receivership Entities, employees, vendors, creditors, and other parties in interest; (f) a receivership will do more good than harm by preserving value and providing transparent Court-supervised control over the wind-down; and (g) no less drastic remedy will adequately protect the property and parties in interest under the circumstances.

I. The Defendants are in continuing default of their obligations to Spectrum. They have not paid their debts when due and are insolvent or in immediate danger of being insolvent.

J. The balance of the equities in this case dictate appointment of the Receiver to take over control of the business operations of Receivership Entities and take control of the Receivership Property (defined below).

K. The Court is satisfied that the relief requested in the Motion is proper and necessary in order to protect, preserve, maintain and maximize the value of the Assets.

L. The Motion specifically requests that the Court appoint Dinoff to act as receiver in this case. Since March 2026, Dinoff has provided advisory and consulting services to Schwebel, including, but not limited to, cash forecasting, liquidity management, development of budgets, negotiating with creditors, marketing the companies through an investment banker, and sales and winddown strategies. Accordingly, Dinoff is already familiar with the businesses, their contracts, creditors, and the financial and other issues associated therewith. Based on this, the Court finds that the selection of Dinoff, supported by his firm, KCP, to serve as receiver is in the best interests

of all interested parties and the receivership estate. Further, the Court finds Dinoff to be well qualified and that he meets all applicable requirements to serve as receiver over the Defendants and their respective assets.

M. The Court is satisfied that the relief requested in the Motion is proper and necessary to protect, preserve, maintain and maximize the value of the Assets.

Accordingly, the Motion is GRANTED, and it is hereby **ORDERED and ADJUDGED** as follows:

1. KCP, through Dinoff, is hereby appointed receiver (the "**Receiver**") of, for, and over the Defendants, and all their respective assets, business, and affairs. KCP is qualified to serve as receiver in this matter and has the requisite experience and qualifications to serve as receiver of the Defendants pursuant to the terms of this Order. The Receiver shall manage, preserve, and protect the Receivership Entities, its income and profits, its assets and property, and its rights and privileges.

2. Without limiting the foregoing, the Receiver is hereby granted, authorized, and vested with all of the powers, rights, and duties provided under the United States Code, the Federal Rules of Civil Procedure, the Local Rules, applicable laws and shall possess all powers, authorities, rights and privileges heretofore possessed by the members, directors, officers, managers and any other control persons of the Receivership Entities under applicable state and federal law, by the governing charters, by-laws, articles, operating agreements, Receivership Entities agreements, contracts and/or any other agreements concerning the authority to manage or make decisions concerning the. Without limiting the generality of the foregoing, the following provisions, and the powers and authority conveyed therein, apply to the Receiver and this receivership:

a. **Custody and Control.** The Receiver shall take exclusive custody and control of the Receivership Entities, including possession of all the funds, property, mail, and

other assets of, in the possession of, or under the control of the Receivership Entities (collectively, the "**Assets**"). The Assets of the Receivership Entities include, without limitation, the following: all real property, inventory, intellectual property, licenses, personal property, equipment, accounts, accounts receivable, Revenues (as defined below), general intangibles, investment property, instruments, documents, bank accounts and amounts therein, and any other property of any nature whatsoever of the Receivership Entities, jointly with another, now or hereafter in the possession of, in transit to or from or under the custody or control of the Receivership Entities, and the proceeds and products of the foregoing in whatever form the same may be, wherever located, now existing and hereafter arising or coming into existence. The Receiver may take all steps necessary to secure the business premises and the other Assets of the Receivership Entities.

b. **Protect and Preserve Operations and Assets.** The Receiver may: (i) operate the Receivership Entities and take all other actions it deems necessary to preserve, protect, and manage the Receivership Entities, their business, and all Assets in order to preserve their value; (ii) pay all utility expenses or other obligations to suppliers or servicers in the ordinary course of business, including obligations incurred prior to commencement of the receivership so long as the Receiver has determined that it is prudent to do so in order to maintain business relationships that will accomplish the goals of the receivership; and (iii) make repairs necessary to maintain and protect the Assets. As long as Spectrum is a secured creditor, the Receiver may use cash collateral, collections, and proceeds only in accordance with any budget approved by Spectrum.

c. **Collection of Revenues.** To the extent that receivables are secured by Spectrum, the Receiver shall direct the receivables to be paid directly to Spectrum to be applied to the obligations owed to Spectrum or shall pay Spectrum the value of Spectrum's security interest unless otherwise agreed by the Receiver and Spectrum or as otherwise ordered by the Court. To the extent that the Receiver collects the profits, rents, revenues, cash flow, insurance proceeds, and all other income of any nature whatsoever from the Assets and operation of the Receivership Entities (collectively, the "**Revenues**"), the Receiver shall pay from the Revenues all Receivership Expenses (as defined below). The Receiver has the authority to receive and endorse, present for payment, and/or collect any check, money order, credit card account, or other form of payment payable to either the Receivership Entities or the Receiver.

d. **Leases and Executory Contracts.** The Receiver may cancel any leases or executory contracts of the Receivership Entities if the performance of any such lease or contract would not be beneficial to the receivership estate. Nothing in this provision affects any rights of parties to rejected or cancelled executory contracts or leases to file a proof of claim for damages arising out of such rejection or cancellation, if and to the extent a proof of claim process is implemented by the Receiver in this receivership. The Receiver is permitted to assign leases and

executory contracts as permitted by the terms of such contracts or leases and subject to Court approval.

e. **Receivership Expenses.** The Receiver may incur and pay out of the Revenues such expenses and obligations coming due after the date of the Receiver's appointment as may be necessary or appropriate for the maintenance, protection, or preservation, or operation of the Receivership Entities' business or the Assets, or that are incurred in carrying out the directions set forth in this Order or other orders of this Court (collectively, the "**Receivership Expenses**"). The Receivership Expenses include, without limitation, all taxes and assessments, insurance premiums for property, casualty, liability and other essential insurance, utility expenses, operating expenses, lease obligations, wages, management fees, and compensation to the Receiver and any professionals retained by the Receiver, including attorneys' fees.

f. **Pre-receivership Liabilities.** The Receiver and the receivership estate are not liable for any expenses, accounts payable, or other claims that were incurred prior to the effective date of this Order. Notwithstanding the foregoing or anything in this Order that may be construed to the contrary, in the Receiver's discretion, the Receiver may (but is not required to) pay those expenses, accounts payable, or claims incurred in the normal and ordinary course of business prior to this Order (including, without limitation, tax, lease, payroll, employee benefit, utility, and vendor obligations) to the extent that the payment of any such pre-existing expense, account payable, or claim is necessary or desirable for the preservation of the Assets. In addition, subject to the terms of this Order or further Court orders, the Receiver shall not be required to use any Revenues collected after the Receiver takes possession of the Assets for payment of any expenses, accounts payable or other obligations with regard to the Assets incurred prior to the Receiver's taking possession of the Assets.

g. **Bank Accounts.** The Receiver shall take immediate possession, control, management, and charge of all deposit, checking, savings, banking, and money management accounts relating to the Receivership Entities; change the name on any such existing account into the Receiver's name; relocate, at the Receiver's discretion, any such existing account to a new financial institution; and open and maintain deposit accounts in the Receiver's name. All institutions, banks, saving and loans, depositories, credit unions, brokerage accounts, and other financial institutions where any such accounts are located are directed to deliver such deposits and such records (including any information required by a bank or financial institution or financial or depository institution to enable the Receiver to take exclusive control over any and all accounts, such as access to online banking) as the Receiver may reasonably request with respect to such deposits and accounts to the Receiver.

h. **Investment of Funds.** The Receiver may invest any excess cash in one or more interest-bearing accounts with a state or national financial institution, so long as all

amounts (including, without limitation, accrued interest thereon) in such account(s) are fully insured by the Federal Deposit Insurance Corporation.

i. **Sale of Assets.** Upon the motion of the Receiver, the Court may authorize the Receiver to sell any or all Assets, other than in the ordinary course of business, after notice and an opportunity to object has been given to interested parties. The Receiver has discretion, subject to this Court's approval, to determine how to sell the Assets so as to maximize the value thereof. Except as otherwise authorized in any order approving the sale, all sale proceeds shall be retained by the Receiver and only distributed in accordance with further orders of this Court. The Receiver is authorized to dispose of those items the Receiver determines to have a "de minimis" value of less than $5,000.00 to the receivership by way of donation to a charitable organization or in a casual sale, as the Receiver may deem reasonable. Nothing in this paragraph limits the authority of the Receiver to sell Assets in the ordinary course of business, which, for the avoidance of doubt, may occur without notice to parties in interest and/or prior approval of the Court.

j. **Employment of Professionals.** The Receiver may choose and employ, upon notice and Court approval, professionals (the "**Receiver Professionals**") as the Receiver deems advisable or necessary in the performance of the Receiver's duties and responsibilities under the authority granted by this Order, and on the terms and conditions as the Receiver determines to be in the best interests of the receivership estate. If the estate does not have sufficient funds to cover the expenses, the Receiver may seek orders from the Court to impose a charge on the unsecured assets to cover outstanding amounts. The Receiver and the Receiver Professionals shall owe duties only to the receivership and the Court. The Receiver's retention of the law firm of Hahn Loeser & Parks LLP as its attorneys is hereby approved.

k. **Authority to Commence Bankruptcy Proceedings.** Notwithstanding any provision of the organizational documents, operating agreements, bylaws, shareholder agreements, or other governing documents of the Receivership Entities to the contrary, and notwithstanding any requirement of consent, vote, or approval by any member, manager, director, officer, shareholder, or other equity holder or control person of the Receivership Entities, the Receiver is hereby expressly authorized, empowered, and vested with the sole and exclusive authority, in the Receiver's business judgment and without further order of this Court, to cause any one or more of the Receivership Entities to file a voluntary petition for relief under any chapter of title 11 of the United States Code (the "Bankruptcy Code"), including, without limitation, chapter 7, chapter 11 (including Subchapter V, if eligible), or any other applicable chapter, in any United States Bankruptcy Court of appropriate venue provided, however, that for so long as Spectrum remains a secured creditor of the Receivership Entities, the Receiver shall consult in good faith with Spectrum a reasonable period in advance of commencing any such proceeding regarding the timing, venue, chapter, and strategy of the proposed filing. In connection therewith, the Receiver is further authorized to: (i) execute and file, on behalf of any of the Receivership Entities, a voluntary petition, all schedules,

statements of financial affairs, lists, first-day motions, and other pleadings, documents, certifications, and instruments necessary or appropriate to commence and prosecute such case; (ii) select, retain, and compensate bankruptcy counsel, financial advisors, investment bankers, claims and noticing agents, and other professionals to represent or assist the Receivership Entities in such case, subject to bankruptcy court approval to the extent required; (iii) act as, or designate, the authorized representative, responsible officer, or "person in control" of the debtor(s) for all purposes under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and any applicable local rules, including for purposes of executing petitions, verifications, declarations, and 341 meeting appearances; (iv) determine the appropriate venue and timing of any such filing; (v) negotiate, execute, and deliver debtor-in-possession financing, cash collateral stipulations, plan support agreements, asset purchase agreements (including under section 363 of the Bankruptcy Code), and any related documents; and (vi) take any and all other actions the Receiver deems necessary, appropriate, or desirable in connection with any such bankruptcy proceeding. No further action, consent, approval, resolution, or authorization from the members, managers, directors, officers, shareholders, or any other equity holders or control persons of the Receivership Entities shall be required to authorize the filing of a bankruptcy petition or the taking of any related action by the Receiver, and any such further action, consent, approval, resolution, or authorization is hereby deemed given and confirmed by entry of this Order. The Receiver's exercise of the authority granted in this paragraph shall not constitute a resignation, discharge, or termination of the Receiver, and the Receiver shall remain in place until further order of this Court or as otherwise provided in any order entered by the bankruptcy court in any such case.

l. **Lawsuits and Settlements.** The Receiver may initiate, defend, participate in, or take any action in law or equity that the Receivership Entities may have, and may additionally initiate or take action upon any claims that would normally be reserved for creditors of a Receivership Entities to recover assets fraudulently transferred by the Receivership Entities, including, without limitation, actions arising under Chapter 1336 of the Ohio Revised Code and/or other applicable fraudulent transfer law. The Receiver may further settle any claims of the Receivership Entities or against the Receivership Entities in the Receiver's reasonable business judgment and without Court approval. For the avoidance of doubt, the Receiver's authority under this paragraph is in addition to, and not in lieu of, the Receiver's express authority to commence proceedings under title 11 of the United States Code as set forth in the paragraph entitled "Authority to Commence Bankruptcy Proceedings".

m. **Books.** The Receiver shall prepare and maintain complete books, records, and financial reports of the income and expenses associated with this case, and all other appropriate records.

n. **Mail.** The Receiver shall have the right to issue demands in the name of the receivership upon U.S. Postal Service, or any other public or private entity, to gain exclusive possession and control of such postal boxes as are or may have been used

by the Receivership Entities, its owner(s), and any person or entities acting at their direction or under their control for the receipt of rent, income, and other mail or packages related to the Receivership Entities. The Receiver is authorized to open all mail (including all email), open packages, and receive all faxes and other communications addresses to or from the Receivership Entities and any persons or entities acting at their direction or under their control concerning the Receivership Entities and received at the Receivership Entities, in any postal box(es) or elsewhere.

o. **Receivership Tax Returns.** The Receiver will prepare and file any tax returns related to the receivership estate as may be required by law. Nevertheless, the Receiver shall not be responsible for the preparation and filing of any tax returns for the Defendants (including income, personal property, commercial activity, gross receipts, sales and use, or other tax returns) other than to provide the Defendants with information in the Receiver's possession that may be necessary for the Defendants or their affiliates to prepare and file their returns. The Defendants shall provide to the Receiver any information needed to file any tax returns for the receivership estate.

p. **Other Actions.** The Receiver may do all such other things are or may be, in the Receiver's judgment, reasonable, necessary, or usual for the protection, possession, control, management, operation, lease, and sale (but only pursuant to the terms, and subject to the limitations, of this Order) of the Receivership Entities, their business, and/or the Assets.

3. The Receiver shall take reasonable actions to comply with all laws known by the Receiver to be applicable to the operation of the Assets including laws of the United States, the State of Ohio, and otherwise.

4. Upon request of Spectrum, as long as Spectrum is a secured creditor, the Receiver shall provide a budget for the operation of the Receivership Entities and the Assets for the period of up to thirteen weeks.

5. Any person, including but not limited to the Defendants, provided notice of this Order must immediately, or within such time period set forth by the Receiver in writing, cooperate with the Receiver in the transition of the management of the Receivership Entities, their business operations, and all other Assets, and shall turnover, deliver, or otherwise make available to the Receiver:

a. Possession and custody of the Assets;

b. Possession and custody of documents of the Receivership Entities, including but not limited to, all books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), vendor lists, customer lists, title documents, and other papers, wherever located, as the Receiver deems necessary for the proper administration, management, or control of the receivership estate;

c. All keys, computer passwords, entry codes, PIN numbers, and combinations to locks necessary to gain or to secure access to any of the Assets or documents of the Receivership Entities, including but not limited to, access to the Receivership Entities' business premises, means of communication, accounts, computer systems, and other property;

d. Information identifying the accounts, employees, properties or other assets or obligations of the Receivership Entities;

e. All pending contracts;

f. All insurance policies;

g. All documents pertaining to safety and environmental laws, together with all reports, surveys, inspections, orders, citations, warnings, and notices regarding the same;

h. Site plans, surveys, specifications, floor plans, drawings, and measurements related to any Assets;

i. All technical manuals related to any Assets; and

j. Such other records related to any Assets as may be reasonably requested by the Receiver.

6. The Defendants shall turnover any and all Assets of the Receivership Entities, or related to the Assets to the Receiver. The Defendants and their members, managers, officers, employees, independent contractors, agents and representatives shall fully cooperate with Receiver and shall take all steps necessary to comply with this Order and other orders of the Court, and with all applicable law and/or rules and are enjoined from interfering with the use, management, possession, control, and liquidation of the Assets by Receiver.

7. The Defendants and their members, managers, directors, officers, agents and employees are prohibited from removing any Assets and diverting any income.

8. The Defendants shall fully cooperate with Receiver in adding Receiver as an additional insured on all insurance relating to the operation and management of the Assets, including, but not limited to, fire, extended coverage, vehicle coverage, property damage, liability, fidelity, errors and omissions, and workers' compensation, and modifying the policies if deemed appropriate by the Receiver, but subject to approval for any modifications to insurance. The Defendants and their members, managers, directors, officers, independent contractors, employees and agents are prohibited from canceling, modifying, reducing, or otherwise changing any and all insurance coverage in existence with respect to the Assets. The Receiver may cancel such insurances that are deemed obsolete or unnecessary to the protection of the Assets or burdensome to the operation of the Receivership Entities or its Assets.

9. Except upon and to the extent of leave granted by this Court, or upon and in accordance with the express instructions of the Receiver, the Receivership Entities, and its owners, members, managers, directors, officers, employees and agents, and any and all persons acting or purporting to act on behalf of the Receivership Entities are enjoined and prohibited from taking, attempting to take, and retaining possession of, and/or otherwise exercising control over, the Receivership Entities, their businesses and any Assets, and are prohibited from diverting from the Receivership Entities any Assets or any income related thereto.

10. Receiver shall take possession and control of and receive from any and all insurance, brokerage or service entities any and all insurance policies, brokerage accounts, investment accounts, trading platforms or investment property of all kinds and natures that the Receivership Entities owns (legally, equitably or beneficially, collectively, the "**Investment**

**Assets**"). Receiver is hereby authorized to cancel, maintain or change any aspect of any such Investment Assets in its sole discretion.

11. Except upon and to the extent of leave granted by this Court, during the pendency of the receivership ordered herein, all creditors, claimants, political entities, parties in interest, sheriffs, marshals, and other officers, and their respective attorneys, servants, agents, and employees, and all other persons, firms, and corporations, are enjoined and stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, and/or in the name of the Receivership Entities, the Assets, Receiver, and/or the Receiver's duly authorized agents acting in their capacities as such. The injunction set forth in this paragraph includes, without limitation, a prohibition of the following actions:

a. Commencing, prosecuting, litigating, continuing, or enforcing any suit against the Receivership Entities, or that in any way may affect or impact the Assets and/or any rights, claims, or interests of the Receivership Entities, except that actions may be filed to toll any applicable statute of limitations so long as such action is immediately stayed;

b. Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, any of the Assets, or any property claimed by the Receivership Entities, or attempting to foreclose, forfeit, alter or terminate any of the Receivership Entities' interests in property, whether such acts are part of a judicial proceeding or otherwise;

c. Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding, taking possession of, interfering with, or creating or enforcing a lien upon any property, wherever located, owned by or in the possession of the Receivership Entities, the Receiver, or any agent of the Receiver; and

d. Doing any act or thing to interfere with the Receiver taking control, possession, or management of the property subject to the receivership, or to in any way interfere with the Receiver in the performance of its duties, or to interfere with the jurisdiction of this Court over the property and assets of the Receivership Entities.

e. No creditor may exercise any right of setoff or recoupment against the Receivership Entities or the Assets without prior order of this Court, upon motion and notice to the Receiver and Spectrum.

Notwithstanding the foregoing, nothing in this Order shall be deemed to enjoin or otherwise prohibit Plaintiff from effecting service of the summons and complaint or any other document required to be served in this case.

12. Until its secured claim is paid in full, the Receiver shall permit Spectrum and its representatives, professionals, agents, and independent contractors, to inspect the Receivership Entities, their accounts, and all books and records with respect to the receivership and Receivership Entities and upon reasonable notice.

13. In accordance with Rule 66.1 of this Court's Local Rules, within sixty (60) days after the Receiver takes possession of the receivership estate, the Receiver shall file an inventory (the "**Inventory**") of all the property and assets in the receiver's possession, or in the possession of others who hold possession as his or her agent, and in a separate schedule an inventory of the property and assets of the estate not reduced to possession by the receiver but claimed and held by others. Within 30 days after the filing of the Inventory, the Receiver shall file a report (the "**Initial Report**") of the receivership's receipts and expenditures and acts and transactions by the Receiver acting in an official capacity for the period of the date the Receiver took possession of the receivership estate through the last day of the calendar month that immediately precedes the due date of such Initial Report. The Receiver shall file subsequent reports (a "**Subsequent Report**") of the receivership's receipts and expenditures and acts and transactions by the Receiver on a monthly basis. Each Subsequent Report shall be filed within 20 days after the last day of the month to which such Subsequent Report relates.

14. The Receiver and the Receiver Professionals are entitled to reasonable compensation for the performance of services relating to this receivership, and for the cost of actual and reasonable out-of-pocket expenses incurred by them relating to such services. Fees of the Receiver and Receiver Professionals will be paid ahead of all other administrative expenses out of the assets of the receivership estate, notwithstanding any lien rights of creditors. The Receiver will be compensated in accordance with the rates attached to the Dinoff Declaration as Exhibit A to the Motion.

15. Notwithstanding anything to the contrary in this Order, and notwithstanding Spectrum's security interests in and liens upon the Assets (including cash, deposit accounts, receivables, and all proceeds thereof, collectively, "Cash Collateral"), Spectrum consents, and the Court hereby authorizes, the Receiver to use Cash Collateral to pay the fees, costs, and expenses of the Receiver and the Receiver Professionals allowed under this Order, in each case in accordance with a budget approved by Spectrum (the "Approved Budget") and subject to any permitted variances thereto. To secure such payment, Spectrum's liens and security interests in the Assets shall be, and hereby are, subject to a carve-out (the "Carve-Out") for the payment of: (i) allowed fees and expenses of the Receiver and the Receiver Professionals incurred consistent with the Approved Budget and approved pursuant to the compensation procedures set forth in this Order; and (ii) statutory fees payable to the Clerk of Court. The Carve-Out shall be senior in priority to Spectrum's liens and security interests and to all other liens, claims, and encumbrances against the Assets, and shall be payable from Cash Collateral and other proceeds of the Assets without further order of the Court. Nothing in this Order shall be construed to require the Receiver or any Receiver Professional to seek recovery of fees or expenses from any source other than the Assets and Cash Collateral, and Spectrum shall not object to, or seek recharacterization,

disgorgement, surcharge, or reallocation of, any amounts paid to the Receiver or the Receiver Professionals in accordance with this paragraph. The Carve-Out shall include fees and expenses incurred by the Receiver and Receiver Professionals through and including the date that is thirty (30) days following any order terminating the receivership or the Receiver's authority to use Cash Collateral.

16. In accordance with Rule 66.1(c) of the Court's Local Rules, the compensation of the Receiver, the Receiver Professionals, and all those who may have been appointed by the Court to aid in the administration of the estate, the conduct of its business, the discovery and acquisition of its assets, the formation of reorganization plans, and the like, shall be ascertained and awarded by the Court in its discretion, upon application made in accordance with the appropriate local rules.

17. Notwithstanding anything else contained in this Order, the Receiver, and its counsel, are entitled to monthly interim compensation, according to the hourly fees and other terms and conditions set forth in Exhibit A to the Motion and the terms of this Order. Specifically, on or after the fifth day of each month following the month for which compensation is sought, each receivership estate professional seeking compensation may file an application (each, a "**Monthly Fee Statement**") for interim allowance of compensation for services rendered and reimbursement of expenses incurred during the preceding month, and serve such Monthly Fee Statement, on (i) Spectrum, for as long as Spectrum remains a secured creditor, (ii) the Defendants; and (iii) any other party in interest that has filed a notice of appearance in this action (each, an "**Application Recipient**" and collectively, the "**Application Recipients**"). Any Professional that fails to file a Monthly Fee Statement for a particular month or months may subsequently submit a Monthly Fee Statement that includes a request for compensation earned or expenses incurred during the previous months. Each Application Recipient will have until 4:00 p.m. (Prevailing Eastern Time)

21 days after service of a Monthly Fee Statement to review the request ("**Objection Deadline**"). The Objection Deadline shall be conspicuously noted on the Monthly Fee Statement. Upon the expiration of such 21-day period, if no Application Recipient has filed with the Court, an Objection (defined below), a receivership professional may file a certificate of no objection with the Court with respect to the unopposed portion of the fees and expenses requested in its Monthly Fee Statement (each, a "**CNO**"). After a CNO is filed with the Court, the Receiver is authorized to pay the professional an amount (the "**Actual Monthly Payment**") equal to 80% of the fees and 100% of the expenses requested in the applicable Monthly Fee Statement (the "**Maximum Monthly Payment**") that are not subject to an objection. If any Application Recipient objects to a Monthly Fee Statement, the objecting party shall, within 21 days of service of the Monthly Fee Statement, serve a written notice upon the respective Professional and each of the Application Recipients (the "**Notice of Objection to Monthly Fee Statement**") setting forth the precise nature of the objection and the amount at issue. Thereafter, the objecting party and the Professional shall attempt to resolve the objection on a consensual basis. If the parties reach an agreement, the Receiver shall promptly pay 80% of the agreed-upon fees and 100% of the agreed-upon expenses. If, however, the parties are unable to reach a resolution of the objection within fourteen days after service of the Notice of Objection to Monthly Fee Statement, the objecting party shall file its objection (the "**Objection**") with the Court within three business days and serve such Objection on the respective professional and each of the Application Recipients. Thereafter, the professional may either (i) file with the Court a response to the Objection, together with a request for payment of the difference, if any, between the Maximum Monthly Payment and the Actual Monthly Payment made to the affected Professional (the "**Disputed Amount**") or (ii) forego payment of the Disputed Amount until the next hearing on a Fee Application or Final Fee Application (each as defined herein), at

which time the Court will consider the Objection, if requested by the parties. Each professional may submit its first Monthly Fee Statement on or after August 7, 2026. This initial Monthly Fee Statement will cover the period from the entry of this Order through July 31, 2026. Thereafter, the professionals may file Monthly Fee Statements in the manner described above.

18. Beginning with the period ending on September 30, 2026 and at three-month intervals thereafter (the "**Fee Period**"), each of the professionals may file and serve on the Application Recipients a fee application (each, an "**Fee Application**") for compensation and reimbursement of expenses sought in the Monthly Fee Statements served during such period. Each Professional shall serve notice of its Fee Application (which identifies the professional seeking compensation, discloses the period for which the payment of compensation and reimbursement of expenses is being sought, and describes the amount of compensation and expenses sought) on all parties that have entered their appearance. The Fee Application should conform to the requirements of the Local Rules of this Court. Application Recipients will have 21 days after service of a Fee Application to object thereto ("**Fee Application Deadline**"). The Fee Application Objection Deadline shall be conspicuously stated on the respective Fee Application.

19. The Receiver shall request that the Court schedule a hearing on Fee Applications at least once every three months or at such other intervals as the Court deems appropriate. The Court, in its discretion, may approve an uncontested Fee Application without the need for a hearing upon the professional's filing of a CNO. Upon allowance by the Court of a professional's Fee Application, the Receiver shall be authorized to promptly pay such professional all allowed fees (including the 20% holdback) and expenses not previously paid. A pending Objection to payment of compensation or reimbursement of expenses will not disqualify a professional from the future payment of compensation or reimbursement of expenses under this Order. Neither (i) the payment

of or the failure to pay, in whole or in part, compensation for services and reimbursement of expenses under these compensation procedures nor (ii) the filing of or the failure to file an Objection to any Monthly Fee Statement or Fee Application will bind any party in interest or the Court with respect to the allowance of compensation.

20. Notwithstanding anything in this Order to the contrary, KCP shall apply any remaining amounts of any pre-appointment retainer, if applicable, as a credit toward post-appointment fees and expenses, after such post-appointment fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to KCP. KCP is authorized without further order of the Court to reserve and apply amounts from the pre-appointment special purpose retainer that would otherwise be applied toward payment of post-appointment fees and expenses as are necessary and appropriate to compensate and reimburse KCP for fees and expenses incurred on or prior to appointment consistent with its ordinary course billing practices.

21. No bond shall be required to be posted by the Receiver. The Receiver may nevertheless, in its sole and exclusive discretion, obtain a bond or other coverage in such amounts and at such costs as the Receiver reasonably deems necessary. The costs of such bond or other coverage shall be paid in the manner specified in the Order for the payment of other costs of the Receiver.

22. Except to the extent of the Receiver's bond to the Court, if any, the Receiver and its employees, agents, and attorneys shall have no liability whatsoever to any party in this case, third parties, and any other party, person, or entity for any claims, losses, liabilities, or damages arising out of the performance by the Receiver of the Receiver's duties under this Order, except for claims due to their gross negligence, willful misconduct, malicious acts, and/or the material failure to comply with this Court's orders.

23. The Receiver and its employees, agents, and attorneys shall have no personal liability in connection with any environmental claims, liabilities, obligations, liens, or amounts owed to any of the Receivership Entities' creditors because of its duties as Receiver and/or because of the services provided to the Receiver and/or relating to this receivership. Receivership Expenses, obligations, liabilities, or risks incurred by the Receiver in connection with the maintenance, preservation, or operation of the Receivership Entities' business or the other Assets, or in the performance or fulfillment of its duties, are not and shall not become the personal expenses, obligations, liabilities, or risks of the Receiver; rather, they are exclusively the expenses, obligations, liabilities, and risks of the receivership estate.

24. Within five days of the entry of this Order, the Receiver shall file with the Clerk of this Court an Undertaking and Oath of Receiver, conditioned that the Receiver will faithfully discharge its duties as such and will faithfully obey the Order of the Court.

25. This receivership shall continue until further order of this Court.

26. Within 30 days of termination of the receivership or the removal or resignation of the Receiver, the Receiver shall file a final accounting.

27. The Receiver may resign as receiver by giving thirty (30) days advance written notice to this Court. Upon giving such notice and approval by this Court of a final accounting of the Receiver's duties hereunder, and the Receiver's turning over of the Assets, funds held pursuant hereto and related records, the Receiver shall be released and discharged from further obligations hereunder and the Receiver's bond – if still in place – may be cancelled.

28. The Receiver may be removed in the Court's equitable discretion upon a motion for cause. If the Receiver is removed, a successor receiver may be appointed on an expedited basis by motion requesting the appointment of a successor receiver.

29. Only after the Court approves the Receiver's final accounting may the Receiver be discharged, except as provided herein.

30. The Receiver may seek direction from this Court on any matter related to this Order, including, but not limited to, relief from or modification of the provisions of this Order.

31. The Receiver may seek such other and further orders of this Court as it deems necessary or expedient to carry out its duties and responsibilities under this Order.

32. The reversal or modification on appeal of this Order shall not affect the validity of any actions taken in good faith by the Receiver, the payment of compensation to which the Receiver or Receiver Professionals are entitled, or the payment of expenses incurred by the Receiver or Receiver Professionals pursuant to this Order.

33. Spectrum may, in its sole discretion, and without need for Court approval, make advances, but shall not be required to make advances, for payment of the following expenses in aid of the Receiver:

a. Security for the Assets;

b. Utilities for the Receivership Property, including gas, electric, telephone, and water;

c. Insurance for the Assets;

d. Diligence relating to the marketing and disposition of the Assets;

e. Taxes of any kind or nature accruing during the receivership required to be paid on the Assets by the statutes of the United States or any state political subdivision or any governmental agency;

f. Expenses for the operation and maintenance of the Receivership Entities, including but not limited to undertaking any construction, repairs, maintenance or alterations of the Receivership Property;

g. Expenses for attorneys, accountants, or other agents employed by the Receiver; provided, however, this Order shall control with respect to counsel for the Receiver; and

h. Any other expenses of the receivership estate, subject to any approval procedures imposed in this Order or by this Court.

34. The Receiver may obtain secured credit from Spectrum if the Receiver determines that it is necessary to preserve value, complete the wind-down, or liquidate the Receivership Property. Any and all monies advanced by Spectrum shall become expenses of the administration of the receivership accruing interest until refunded at the federal judgment interest rate, and shall be refundable directly to Spectrum, without further Court Order, and shall be secured by a first priority security interest in all of the Assets, all without the need for any filing for perfection or action by Spectrum of any kind to provide notice of such security interest. The Receiver may obtain unsecured credit and incur unsecured debt in the ordinary course of administering the receivership estate if the Receiver determines that such credit or debt is necessary to preserve value, complete the wind-down, or liquidate the Receivership Property. Any such debt shall be an administrative expense of the receivership estate. If the Receiver is unable to obtain unsecured credit on acceptable terms or unable to obtain secured credit from Spectrum on acceptable terms, the Receiver may seek further authority from this Court, after notice and hearing as the Court directs, to obtain credit or incur debt on other equitable terms, including by granting liens or priorities, subject to adequate protection of existing lienholders as required by law.

35. Except as modified by this Order, Spectrum's interest in the Assets shall continue and shall not be impaired by the appointment of the Receiver until Spectrum's secured debt is fully and indefeasibly paid.

36. This Order and the injunction contained within shall be in full force and effect as of the date and time it is entered by the Court.

37. This Order and the Receiver's appointment shall remain in full force and effect until further order of this Court. This Court retains jurisdiction with respect to this matter for all purposes.

**38. The Schwebel Baking Company Collectively Bargained Pension Plan and the Schwebel Baking Company Pension Plan.** The Pension Benefit Guaranty Corporation ("PBGC") is the government agency created under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461 (2018 & Supp. V 2024), to administer the federal pension insurance program and to guarantee the payment of certain pension benefits upon termination of a pension plan covered by Title IV of ERISA. PBGC asserts that each of the receivership entities is either the contributing sponsor of or a member of a contributing sponsor's controlled group (within meaning of 29 U.S.C. § 1301(14)) with respect to the Schwebel Baking Company Collectively Bargained Pension Plan and the Schwebel Baking Company Pension Plan (collectively the "Pension Plans"). PBGC asserts that the Pension Plans are single-employer defined benefit plans insured by PBGC and covered by Title IV of ERISA, and that the receivership entities are jointly and severally liable with respect to the Pension Plans pursuant to ERISA and the Internal Revenue Code.

**a.** For the avoidance of doubt and notwithstanding any provision of this Order, assets belonging to the Pension Plans are not assets of the receivership estate, the receivership entities, or the Receiver. The Receiver shall not change the name of or relocate any bank accounts holding assets belonging to the Pension Plans.

**b.** For the avoidance of doubt and notwithstanding any provision of this Order, the Pension Plans are not and shall not be treated as executory contracts.

**c.** No provision of this Order shall in any way be construed to discharge, release, limit, or relieve the receivership estate, any receivership entities, the Receiver, or any other party in any capacity, from any liability or responsibility under any law, governmental policy, or regulatory provision with respect to the Pension Plans or from claims of PBGC with respect to the Pension Plans; provided further, however, that no provision of this Order shall in any way be construed as an assumption or admission of liability by the Receiver, the receivership estate, or any of the

receivership entities in respect of the Pension Plans or PBGC. Nothing herein prohibits PBGC and the Pension Plans from seeking relief from any stay to enforce such liability or responsibility if such enforcement action is directly against the receivership estate, a receivership entity, or the Receiver. Nothing herein prohibits PBGC and the Pension Plans from enforcing such liability or responsibility against any party other than the receivership estate, a receivership entity, or the Receiver.

**d.** Subject to the occurrence of the termination of the Receivership, the receivership entities, the Receiver, and PBGC shall reasonably cooperate in connection with the termination and trusteeship by PBGC of the Pension Plans. The receivership entities or Receiver shall store and preserve all documents and records relating to the Pension Plans ("**Pension Plan Documents**") and shall not destroy or abandon any Pension Plan documents without prior written notice to PBGC and PBGC's prior written consent or upon further order of the Court upon motion by the Receiver with notice to PBGC, which motion shall be filed only after first seeking PBGC's prior written consent to such destruction or abandonment. Pension Plan Documents may be in hard copy or electronic form and may include, but are not limited to, any Pension Plan governing documents, actuarial documents, records and statements of the Pension Plans' assets, board resolutions relating to the Pension Plans, and employee and personnel records of the employees who participate in the Pension Plans. The receivership entities or the Receiver, as the case may be, shall make Pension Plan Documents available to PBGC for inspection and copying until PBGC's investigation, termination, and trusteeship of the Pension Plans are completed. For the avoidance of doubt, the Receiver's obligation to store and preserve the Pension Plan Documents pursuant to this paragraph shall only be with respect to Pension Plan Documents actually transferred to the Receiver.

39. The Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.

**IT IS SO ORDERED this 21st day of July 2026.**

*/s/ John R. Adams*

**Judge John R. Adams**
**United States District Court**

Approved and submitted by:

*/s/ Matthew T. Schaeffer*
Matthew T. Schaeffer (0066750)
Adam J. Biehl (0064836) *(Pro hac to be submitted)*
Bailey Cavalieri LLC
10 West Broad Street, Suite 2100
Columbus, OH 43215
(614) 229-3289 / Fax: (614) 221-0479
abiehl@baileycav.com
mschaeffer@baileycav.com
*and*
Robert B. Berner (0020055) *(Pro hac to be submitted)*
Bailey Cavalieri LLC
409 East Monument Street, Suite 103
Dayton, Ohio 45402
(937) 223-4701/ Fax: (937) 223-0170
E-Mail: *rberner@baileycav.com*
*Attorneys for Plaintiff*

/s/ Mark E. Felger
Mark E. Felger *(Pro hac motion pending)*
Cozen O'Connor
1201 North Market Street, Suite 1001
Wilmington, DE 19801
(302) 295-2087
E-Mail: *mfelger@cozen.com*

*Attorney for Defendants*